IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TISH THOMAS and MAKITA MCGILL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-17-1385-R |
| ) | |
| PAULS VALLEY BOOMARANG ) | |
| DINER, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Doc. 23. Plaintiffs are former employees of Sulphur Boomarang Diner, LLC, one of a chain of "Boomarang"[1] diners in Oklahoma. They brought an Amended Complaint (Doc. 21) for individual and collective Fair Labor Standards Act ("FLSA") violations and state-law defamation against nine Boomarang diners and Ms. Sheila Moehringer, a manager at each of Defendants' diners. Defendants' main issue with the Amended Complaint concerns whether employees of Sulphur Boomarang can sue the other Boomarangs for conduct that Defendants believe was limited to the Sulphur location, and if so whether Plaintiffs can sue on behalf of non-Sulphur Boomarang employees. The Court answers "yes" to both questions because Plaintiffs allege a plausible joint employment relationship. The Motion to Dismiss is denied with respect to these arguments and others, but granted as to Plaintiffs' individual claims for FLSA retaliation that fail to state a plausible claim for relief.

---

[1] For clarity purposes, the Court adopts the Amended Complaint's "Boomarang" spelling of Defendants' disparately spelled diners. *See* Doc. 21, at 1, 2 n.2.

1

## I. Background

The Court accepts as true the following facts alleged in the Amended Complaint, Doc. 21. The Defendant Boomarang diners have a unique employment arrangement. On the one hand, they appear to share authority over and benefit from each other's employees—as in the employees that usually work at a particular location. Specifically, the diners have a "common pooling" arrangement in which they "specially assign[] employees" between locations for training and shift-covering purposes; utilize a "common payment source" and "central payroll system by which wages are paid to all of the defendants' employees"; exercise "joint control over" work conditions; share "common managers" across diners, such as Defendant Sheila Moehringer, "who acted as a manager at all of the defendants' Boomarang locations"; and host monthly meetings at Pauls Valley Boomarang with their managers and assistant managers to collect cash earned at each diner since the prior meeting. *Id.* at 2–4. Plaintiff Tish Thomas, a Sulphur Boomarang "assistant manager," trained at Davis Boomarang, occasionally filled in for absent Davis employees, and attended the monthly Pauls Valley meetings. *Id.* at 4–5, 11. Plaintiff Makita McGill, a Boomarang server, only worked at the Sulphur location. *Id.* at 5.

On the other hand, the Defendant Boomarang diners share a similar problem of wage and hour issues. Defendants did not pay wages to Thomas for time spent traveling to and from monthly Pauls Valley meetings, nor did they pay her mileage. *Id.* at 5. They also failed to pay wages to Thomas and other employees for time spent traveling on "special assignments" between Boomarang locations. *Id.* at 7, 11–12. Moreover, Plaintiffs and other similarly situated Boomarang employees "routinely worked in excess of 40 hours per week

2

for the defendants without receiving overtime compensation." *Id.* at 5, 7. This was because Defendants instructed Thomas, McGill, and others not to "clock in" at certain times, such as when traveling to and from these special assignments. *Id.* at 4–5.

Plaintiffs Thomas and McGill also experienced issues at Sulphur Boomarang that may have led to their June 2017 exit. *Id.* at 5. Plaintiffs inquired "into being paid overtime pursuant to the FLSA." *Id.* at 8–10. Sometime after this, Defendant Moehringer, another Boomarang manager Curtis Abernathy, and Sulfur employee Andrew Tyson, knowingly circulated a false rumor to Plaintiffs' coworkers, "the community at large, including Thomas' children," and "diner patrons." *Id.* at 8–11. They said that Plaintiffs "had been stealing from the Sulphur location by charging defendants' customers full price but recording the sale as discounted, and then pocketing the discount." *Id.* at 8–9. Moehringer fired Thomas on June 21, 2017, and McGill left two days later due to what she calls "hostile working conditions" at Sulphur Boomarang amidst the stealing rumors. *Id.* at 5, 9.

Plaintiffs assert the following individual claims in their Amended Complaint: (1) FLSA failure to pay wages and overtime ("Count 1," Doc. 21, at 4–6); (2) defamation ("Count 3," *id.* at 8–1.); and (3) FLSA retaliation ("Count 3," *id.*). Plaintiffs also bring collective claims under the FLSA, 29 U.S.C. § 216(b), "on behalf of all persons who have been, are and/or will be employed by the business entity defendants in a nonexempt position wherein the employees worked more than 40 hours per week but were not paid the overtime pay required by the FLSA," for (4) failure to pay overtime ("Count 2," Doc. 21, at 6–8); and (5) failure to pay wages for "special assignment" travel ("Count 4," *id.* at 11–12).

## II. Discussion

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan County,* 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676–80 (2009).

### A. FLSA Claims

Defendants raise three arguments to dismiss Claims 1, 4, and 5 under the FLSA, which allows aggrieved employees to bring wage and hour claims on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). For the purpose of this Motion, Defendant Boomarang diners and "common manager" Defendant Moehringer are Plaintiffs' joint employers, and Plaintiffs allege plausible claims for FLSA overtime compensation.

#### 1. Boomarang Defendants' joint employment

Defendants first argue for dismissal of Plaintiffs' FLSA claims against the non-Sulphur Boomarang Defendants because Plaintiffs are only employees of Sulphur Boomarang—the question is whether all Defendant Boomarang diners jointly employed Plaintiffs or is only Sulphur Boomarang liable for potential FLSA violations.

At the outset, the parties disagree whether Defendants' joint employment status is a Rule 12(b)(1) jurisdictional question bearing on Plaintiffs' standing to bring a claim *or* a

12(b)(6) question about the elements of Plaintiffs' FLSA action. Courts have treated this joint employment question differently, based largely on varying interpretations of the FLSA's 29 U.S.C. § 216(b) and whether Congress "clearly state[d] that a threshold limitation on [its] scope shall count as jurisdictional."[2] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006).

The Court declines to settle this debate because under either inquiry—deciding if Plaintiffs meet standing's "causation" and "redressability" elements or assessing the plausibility of Plaintiffs' FLSA claims—the Court examines the nature of the employment relationship, accepting "as true all material allegations of the complaint" and "constru[ing] the complaint in favor of the complaining party,"[3] and finds in Plaintiffs' favor. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

The FLSA circularly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and "employ" means to "suffer or permit to work." *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (quoting 29 U.S.C. § 203(d), (g)). A "striking[ly]" broad definition, "the meaning of 'employee' . . . cover[s] some parties who might not qualify as such under a strict application of traditional agency law principles." *Id.* (quoting *Nationwide Mut. Ins.*

---

[2] *Compare, e.g.*, *Murphy v. Allstaff Med. Res., Inc.*, No. 16-CV-2370-WJM-MEH, 2017 WL 2224530, at *3 (D. Colo. May 22, 2017) (applying Rule 12(b)(1)); *Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F. Supp. 3d 640, 644 (D.S.C. 2016) (same), *with Fuentes v. Compadres, Inc.*, No. 17-CV-01180-CMA-MEH, 2018 WL 1444209, at *2–3 (D. Colo. Mar. 23, 2018) (Applying Rule 12(b)(6)); *Mackereth v. Kooma, Inc.*, No. CIV.A. 14-04824, 2015 WL 2337273, at *4 & n.5 (E.D. Pa. May 14, 2015) (same).

[3] "Here, Defendants' [potential] Rule 12(b)(1) motion is properly understood as a facial challenge because they contend that Plaintiffs' complaint lacks sufficient factual allegations to establish standing." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *see United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).

*Co. v. Darden,* 503 U.S. 318, 326 (1992)). The Court's prime focus is "the economic realities of the relationship" between putative employee and employer—"whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Id.* None of the factors is dispositive; "the test is instead based on the totality of the circumstances." *Johnson v. Unified Gov't of Wyandotte Cty./Kansas City, Kansas*, 371 F.3d 723, 729 (10th Cir. 2004).

Because this "economic realities test" is a broad one, Department of Labor regulations provide guidance on discerning "joint employment"—when a "single individual . . . stand[s] in the relation of an employee to two or more employers at the same time" for FLSA purposes—from "disassociated" employment. 29 C.F.R. § 791.2. If an employee works for two or more employers during a work week, the employers are "disassociated" if they act "entirely independently of each other" with respect to that employee. *Id.* § 791.2(a). By contrast, if an employee's work "simultaneously benefits two or more employers or works for two or more employers at different times during the workweek," joint employment is generally present in three types of situations:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

*Id.* § 791.2(b) (footnotes omitted). *See also Hall v. DIRECTV, LLC*, 846 F.3d 757, 768 (4th

Cir. 2017), *cert. denied,* 138 S. Ct. 635, (2018) (examining "the relationships *between* and *among* [putative joint employers] vis-à-vis the worker").

Plaintiffs allege five facts sufficient to show that each of the nine Defendant Boomarang diners were "joint employers of the plaintiff[s] . . . and other similarly-situated employees": Defendants (1) share employees between Boomarang locations ("common pooling") and "specially assign[] employees" from one location to others to train new employees or cover shifts of absent employees; (2) utilize "a common payment source" and "central payroll system by which wages are paid to all of the defendants' employees"; (3) exercise "joint control over" employees' "work duties, work locations, work hours, and other like employment activities and conditions"; (4) share "common managers" across diners; and (5) host monthly meetings at the Pauls Valley diner with their managers and assistant managers where the owners would collect cash taken in at each Boomarang diner since the last meeting. Doc. 21, at 2–4. Granted, some of these allegations appear to straddle the line between legal conclusion and fact, listing elements directly from the economic-realities test and 29 C.F.R. § 791.2. However, the Amended Complaint certainly "contain[s] sufficient factual matter" to state a "plausible" claim for relief under Rule 12(b)(6) or, alternatively, to withstand Defendants' 12(b)(1) challenge to Plaintiffs' standing.[4] *Iqbal*, 556 U.S. at 678. *See Harris v. Med. Transportation Mgmt., Inc.*, 300 F. Supp. 3d 234, 243 (D.D.C. 2018) ("In the rare instances where courts have dismissed an

---

[4] Defendants' largely ignore Plaintiff's factual allegations and rely on inapposite district court decisions in which restaurant defendants (1) had no ability to hire or fire each other's employees, (2) did not share employees, and (3) paid employees independently. *See Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F. Supp. 3d 640, 647 (D.S.C. 2016); *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 414 (D. Md. 2013).

FLSA claim premised on joint employment on a Rule 12(b)(6) motion to dismiss, they do so when the plaintiff failed to allege *any* facts that would support the inference that the defendant had any control over the employment relationship."); *see also Hall*, 846 F.3d at 772–74; *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148–49 (3d Cir. 2014).

Even assuming that Defendants jointly employed potential class members, Defendants maintain that Plaintiffs Thomas and McGill cannot represent the proposed class because they have not specifically alleged that they were injured by Defendants other than Sulphur. *See* Doc. 23, at 12–13. That is wrong both factually and legally. Looking to the Amended Complaint, Thomas alleged that during her ten-month employment with Sulphur Boomarang, she spent "several days" training at Davis Boomarang and then "three times" at Davis on "special assignment[s]" training new Boomarang employees or filling in for other employees' missed shifts. Doc. 21, at 5, 11. Thomas also claims that she attended monthly meetings at the Pauls Valley Boomarang to distribute cash from her location for the benefit of all Defendants. *Id.* at 4. McGill, by contrast, only alleges that she worked at the Sulphur location. *Id.* at 5. Nonetheless, both Plaintiffs allege that Defendants shared "joint control" over various work functions and a "common payment source." *Id.* at 2–3.

As to the law, while "Plaintiffs [may not] bring suit against the other [restaurants] based on the composition of a future collective," Defendants misunderstand the ramifications of a joint-employment finding. *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013); *see Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). The Court's finding that Defendants—Sulphur *and* the rest of the Boomarang diners—jointly employed Thomas, McGill, and others similarly situated necessarily means that these

8

employees' work "simultaneously benefit[ted]" *all* Defendants. 29 C.F.R. § 791.2(b). Thus, "all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act." *Id.* § 1791.2(a).

### 2. Defendant Moehringer is also an employer

Moving on to Defendants' 12(b)(6) arguments for dismissal of Plaintiffs' FLSA claims, Plaintiffs state a plausible claim for relief that Defendant Sheila Moehringer acted "directly or indirectly in the interest of an employer in relation to an employee" and violated the FLSA. 29 U.S.C. § 203(d). The FLSA does not limit managers from liability for wage and hour violations—the operative test remains the multi-factored "economic realities" test for the relationship between a putative employer and employee. *Johnson*, 371 F.3d at 729; *see Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA."). Defendants' argument attempts to downplay the significance of Plaintiffs' allegations that Moehringer "acted as manager at all of the defendants' Boomarang locations" and terminated Plaintiff Thomas.[5] Doc. 21, at 3, 9. Granted, the rest of Plaintiffs' FLSA allegations regarding Moehringer are an unhelpful recitation of the "economic realities" factors that do not make Plaintiffs' claims any more plausible. *See id.* at 4; Doc. 23, at 16–18. However, the fact that Moehringer was a "manager" at each of the Defendants'

---

[5] Defendants conflate the standards of review at the motion to dismiss and summary judgment stages by relying on the Fifth Circuit's inapplicable decision in *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 250–51 (5th Cir. 2012).

Boomarang locations is enough to show control over Plaintiffs and similarly situated Boomarang employees and to satisfy *Twombly*'s 12(b)(6) standard.

### 3. Specificity of Plaintiffs' FLSA overtime claims

The Court also rejects Defendants' specificity argument that because Plaintiffs did not "plead [that] they worked [unpaid] overtime in a ***given workweek***," the Court must dismiss their FLSA Claims 1 and 4. Doc. 26, at 2–3 (quoting *Landers v. Quality Comms., Inc.*, 771 F.3d 638, 645 (9th Cir. 2014)). Plaintiffs do not identify which weeks they worked overtime; instead Plaintiffs allege that they "*routinely worked* in excess of 40 hours per week for the defendants without receiving any overtime compensation." Doc. 21, at 5 (emphasis added). Putting aside the fact that Defendants may have waived their specificity argument by raising it for the first time in their reply, the argument is also an improper attempt to heighten the pleading standard for FLSA actions. A complaint subject to a 12(b)(6) challenge "does not need detailed factual allegations"; it must simply "raise a right to relief above the speculative level," otherwise referred to as "plausibility." *Twombly*, 550 U.S. at 555–57. Plaintiffs allege plausible FLSA claims despite the semantic difference between pleading uncompensated overtime during a "given workweek" versus "routinely working" uncompensated overtime. *See* Doc. 21, at 4–8, 11–12; *Cooper v. Coil Chem, LLC*, No. CIV-16-473-D, 2016 WL 7168235, at *2–3 (W.D. Okla. Dec. 8, 2016) (rejecting a similar argument "that Plaintiff is required to quantify, at this stage of the proceedings, the number of hours for which he and his co-workers were not paid").

**B. Defamation**

Defendants challenge the sufficiency of Plaintiffs' defamation Claim 2 that Defendant Moehringer and other Boomarang employees circulated a false rumor that Plaintiffs had been stealing from the Sulphur Boomarang diner. The Court rejects the argument because Plaintiffs satisfy the elements for defamation under Oklahoma law.

"A communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 22, 91 P.3d 673, 680. The claim has six elements:

> 1. The statement exposed **[Plaintiff]** to public hatred, contempt, ridicule or disgrace;
> 2. **[Defendant]** communicated the statement to (**a person**)/**persons**) other than **[Plaintiff]**;
> 3. (**That person**)/(**Those persons**) reasonably understood the statement to be about **[Plaintiff]**;
> 4. The statement was false; however, minor inaccuracies do not amount to falsity if the statement is substantially true; and,
> 5. **[Defendant]** did not exercise the care which a reasonably careful person would use under the circumstances to determine whether the statement was true or false; and,
> 6. The statement caused **[Plaintiff]** to suffer (**a financial loss**)/(**damage to Plaintiff's reputation and/or emotional injury**).

OUJI 28.3, DEFAMATION - ELEMENTS (PRIVATE FIGURE PLAINFIFF). *See also Nelson v. Am. Hometown Publ'g, Inc.*, 2014 OK CIV APP 57, 333 P.3d 962, 969. Plaintiffs allege that during their last month working for Boomarang (June 2017), Boomarang managers Sheila Moehringer and Curtis Abernathy, and employee Andrew Tyson, knowingly circulated a false rumor to Plaintiffs' coworkers, "the community at large, including Thomas' children," and "diner patrons" that Plaintiffs "had been stealing from

11

the Sulphur location by charging defendants' customers full price but recording the sale as discounted, and then pocketing the discount." Doc. 21, at 9–11. This allegedly caused Plaintiffs lost wages, reputational harm, and emotional distress. *Id.* at 10.

It is undisputed that viewing the facts in Plaintiffs' favor, Plaintiffs' claim meets elements 1, 4, 5, and 6. *See* Doc. 21, at 8–10. The Court addresses the remaining elements, publication and the communication's subject, in turn.

1. **Publication**

Plaintiffs plausibly allege that Defendants published a false statement. Starting first with Defendant Moehringer, the Motion highlights some confusion in Plaintiffs' Amended Complaint—Plaintiffs allege that Moehringer, Abernathy, and Tyson circulated the false rumor to coworkers, the "community at large," Thomas's children, and "diner patrons," but Plaintiffs also allege that they shared this rumor with Boomarang employees, who "in turn published [the rumor] . . . to non-employees." Doc. 21, at 9, 11. It is unclear who ultimately published the statement outside the company. If Moehringer, Abernathy, and Tyson merely circulated the rumor to Boomarang employees, who then shared it to other employees *and* people outside Boomarang, the communication only subjects the Boomarang Defendants to vicarious liability for defamation if it was within the publishing employees' scope of employment because "[c]ommunication inside a corporation, between its officers, employees, and agents, is never a [defamatory] publication . . . ."[6] *Thornton v.*

---

[6] This communication among Boomarang employees may still be defamatory because while Boomarang Defendants are joint employers for FLSA purposes, they may be separate entities for defamatory publication purposes.

12

*Holdenville Gen. Hosp.*, 2001 OK ¶ 11, 36 P.3d 456, 460); *see Hatcher v. Traczyk*, 2004 OK CIV APP 77, 99 P.3d 707, 709. Otherwise, if Moehringer, Abernathy, and Tyson directly published the statement to those outside Boomarang, Plaintiffs may allege a plausible defamation claim. Viewing the Amended Complaint in the light most favorable to Plaintiffs, it appears the latter is true. Plaintiffs plausibly allege Defendant Moehringer's publication of a false statement to Plaintiff Thomas's children and diner patrons.[7] *See* Doc. 21, at 8–9, 11.

Nonetheless, it is unclear if that publication subjects the Boomarang Defendants to vicarious liability for defamation. As a manager of each of Defendants' Boomarang locations, Moehringer's alleged statement subjects them to liability only if it was within the scope of her employment.[8] *See Hatcher*, 99 P.3d at 709. Defendants concede that "Moehringer and man[a]ger Curtis Abernathy were acting within the scope of their employment when they allegedly made the alleged defamatory statements to Defendant' employees," but the Amended Complaint does not offer context for the public communications to Thomas's children or diner patrons. Doc. 23, at 21–22; *see* Doc. 21, at 9, 11. The Court finds it plausible that Moehringer was managing the Boomarang diners when she told diner patrons that Plaintiffs were stealing from Sulfur Boomarang. Thus, the Boomarang Defendants are vicariously liable for this allegedly defamatory publication.

---

[7] Plaintiffs' bare reference to the "community at large" does not provide factual support for the publication element; it is equivalent to circularly pleading that Defendants "published the statement to the public," which clearly would not satisfy *Twombly*'s plausibility standard. Doc. 21, at 9.
[8] This vicarious liability analysis applies equally to Mr. Abernathy, but only regarding the Boomarang locations that he manages: Davis, Durant, Lone Grove, Pauls Valley, and Sulphur. *See* Doc. 21, at 3.

### 2. Subject of the communication

The answer to the subject element is clear—the diner patrons and Thomas's children "reasonably understood the statement to be about" Plaintiffs Thomas and McGill. The very nature of the communication that "plaintiffs had been stealing from the Sulphur location" was sufficient to notify recipients that the communication concerned Thomas and McGill. Doc. 21, at 8. Defendants ask the Court to look only to Plaintiffs' more generalized allegations that the recipients were members of "the community at large," but the Amended Complaint provides enough specificity to survive dismissal. Doc. 21, at 9; *see* Doc. 23, at 24. The Court therefore declines to dismiss Plaintiffs' defamation claim.

### C. Retaliation

Defendants also move to dismiss Plaintiffs' Claim 3 for FLSA retaliation. There are three elements to this FLSA retaliation claim: (1) adverse employment action—Defendants "discharge[d] or in any other manner discriminate[d] against" Plaintiffs; (2) protected conduct—Plaintiffs "filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] or has testified or is about to testify in any such proceeding"; and (3) causation—Defendants' adverse action was because of Plaintiffs' protected conduct. 29 U.S.C. § 215(3). The Court finds that Plaintiffs fail to state a plausible claim for relief because Plaintiff McGill has not pled an adverse employment action and Plaintiff Thomas has not pled causation.

### 1. Adverse employment action

Defendants clearly subjected Plaintiff Thomas to an adverse employment action when Defendant Moehringer, a "manager at all of the defendants' Boomarang locations,"

terminated Thomas's employment. Doc. 21, at 3; *see id.* at 9 ("Thomas' employment was expressly terminated by Sheila Moehringer, who told Thomas to not return to any of the defendants' locations and that her final paycheck would be mailed to her.").

The same cannot be said for Plaintiff McGill, who alleges that Defendants constructively terminated her by creating a hostile work environment at Sulphur Boomarang. Doc. 21, at 9. To constitute an adverse employment action, "a reasonable person would [have to] view the conditions at [Sulphur Boomarang] as intolerable" such that she "would feel compelled to resign"; McGill's subjective beliefs are immaterial. *Saville v. Int'l Bus. Machines Corp.*, 188 F. App'x 667, 669–70 (10th Cir. 2006) (unpublished); *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004). Even viewing the facts in her favor, McGill's conditions were not "intolerable" simply because Defendants allegedly spread a false rumor to coworkers and patrons accusing her of stealing. *Id.*; *see* Doc. 21, at 8–11; *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005). Accordingly, the Court dismisses Plaintiff McGill's FLSA retaliation claim.

2. **Protected activity**

Continuing with Plaintiff Thomas's remaining elements, she pleads protected activity in the form of "inquiries into being paid overtime pursuant to the FLSA" and into "what amounts were owed to [Plaintiffs] for labor in excess of forty hours each week." Doc. 21, at 8–10. At first blush, it is not entirely clear that asking about overtime compensation under the FLSA is the same thing as "fil[ing] any [FLSA] complaint," but the Tenth Circuit adopts a broad interpretation of the statute and protects "the unofficial

15

assertion of rights through complaints at work." 29 U.S.C. § 215(3); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984). Specifically, the court found nearly identical conduct to be FLSA "protected activity"—a "[p]laintiff's inquiry" with her employer into whether her "packaging department could get overtime like shipping." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1202, 1207 (10th Cir. 2004). Therefore, Plaintiff Thomas's FLSA "inquiries" allegation is also sufficient to constitute protected activity. Doc. 21, at 8–10.

### 3. Causation

Plaintiff Thomas fails to allege a plausible causal connection between her inquiry into overtime compensation and her termination. "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982)); *see also id.* at 1394 (requiring "but for" causation). But here, Plaintiff does not allege that her termination "closely followed" her inquiry; she merely alleges that the termination was "subsequent to" the inquiry.[9] *Id.*; Doc. 21, at 8. This issue requires analysis of the "middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions

---

[9] The Court disregards Plaintiffs' conclusory allegation that "[b]ecause of plaintiffs' respective inquiries into being paid overtime pursuant to the FLSA, the defendants retaliated against Thomas by wrongfully terminating the plaintiffs' employment." Doc. 21, at 9; *see Twombly*, 550 U.S. at 555.

or a formulaic recitation of a cause of action, which the Court stated will not do." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Tenth Circuit confronted the same question of how to apply the *Twombly*/*Iqbal* standard in *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–92 (10th Cir. 2012), only with respect to a retaliation claim under the Family and Medical Leave Act ("FMLA"). *See Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662. The court found that merely alleging two facts—plaintiff complained internally about being denied FMLA leave and was terminated—did "not sufficiently allege . . . retaliation." *Khalik*, 671 F.3d at 1193–94.

> While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement. For instance, Plaintiff should know when she requested FMLA leave and for what purpose. She should know who she requested leave from and who denied her. She should know generally when she complained about not receiving leave . . . . She should know the reasons Defendant gave her for termination and why in her belief those reasons were pretextual. . . . But in fact, Plaintiff offers none of this detail. To be sure, we are not suggesting a court necessarily require each of the above facts. But a plaintiff must include some further detail for a claim to be plausible.

*Id.* at 1194. The Amended Complaint suffers these same insufficiencies, and Thomas should know these missing facts. Thus, the Court dismisses Plaintiff Thomas's retaliation claim.

### III. Conclusion

Defendants' Motion to Dismiss, Doc. 23, is therefore GRANTED IN PART with respect to Plaintiffs' Claim 3 for retaliation and DENIED IN PART as to Defendants' remaining arguments. Further, the Court grants Plaintiffs leave under Rule 15(a)(2) to file a second amended complaint by July 23, 2018, and provide more facts regarding their

respective claims for retaliation. Plaintiffs may not add any new claims not alleged in their Amended Complaint (Doc. 21).

IT IS SO ORDERED this 5th day of July, 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE